# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In re the Dependency of:<br>K.L.D. (DOB: 4/7/03), A.Z.D. (DOB:<br>5/5/04), and C.K.D. (DOB: 11/21/05), | ) ) ) ) | No. 71266-7-I<br>(Consolidated with Nos.<br>71267-5-I and 71268-3-I) |
| Minor Children. | ) ) | DIVISION ONE |
| STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES, | ) ) ) ) | |
| Respondent, | ) ) | |
| v. | ) ) | |
| ASHLEY TODD, | ) ) | UNPUBLISHED |
| Appellant. | ) ) | FILED: August 11, 2014 |

COX, J. — "A parent has a right to a meaningful opportunity to be heard at a hearing to terminate parental rights."[1] Here, Ashley Todd, who was in Idaho and had outstanding warrants in Washington, chose not to attend the termination hearing in person in Snohomish County. The trial court denied her motion to testify by telephone. Because the denial did not deny her due process of law, we affirm.

---

[1] In re Dependency of M.S., 98 Wn. App. 91, 92, 94, 988 P.2d 488 (1999) (citing RCW 13.34.090(1) ("Any party has a right to be represented by an attorney in all proceedings under this chapter, to introduce evidence, to be heard in his or her own behalf, to examine witnesses, to receive a decision based solely on the evidence adduced at the hearing, and to an unbiased fact finder.")).

The unchallenged findings of fact provide context and are verities on appeal.[2]

K.L.D., A.Z.D., and C.K.D. are the biological children of Ashley Todd and Curtis Drakeford. The State removed the children from their parent's custody in November 2010. They were returned to Todd's care two times before she and Drakeford absconded with the children out of state in June 2012. The children were located with their parents in Montana.

After this incident, the State removed the children from their parents' care and did not return them to either parent. Todd, who had previously engaged in support services and parenting classes, stopped engaging in these services after the incident and had no in-person contact with the children.

The Department of Social and Health Services petitioned for termination of the parent-child relationship against both parents in October 2012. The parents were personally served with the petition. Additionally, the State notified the parents that they would need to attend the termination trial, so that it could take their testimony.

On the first day of the termination trial, the parents were not present. Counsel moved to allow Drakeford to appear and testify by telephone. Drakeford was not present because he was in California and had outstanding warrants in Washington.

---

[2] In re Dependency of J.A.F., 168 Wn. App. 653, 667, 278 P.3d 673 (2012).

Todd's counsel joined this motion. Her counsel explained that Todd was in Idaho and also had outstanding warrants in Washington. The court denied the motion, and the case proceeded to trial.

After a multiple-day trial, the court ordered termination of the parent-child relationship for both parents.

Only Todd appeals.

## DUE PROCESS

Todd argues that her procedural due process rights were violated when the trial court terminated her parental rights without allowing her to testify at trial by telephone. We disagree.

Under CR 43, testimony of witnesses is generally taken orally in open court. But "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."[3] The plain words of this rule make the determination by the court discretionary.

Here, the trial court gave the following explanation when it denied Todd's motion to appear by telephone:

> Termination trials are some of the hardest venues for this Court to exercise its judgment in. I rely upon the parties being present so I can view them, watch them, listen to them and make determinations of credibility. I can't do that over the telephone. I don't know who is around those people, I don't know what activity they're engaged in, I don't know if they're reading other materials. I have no way to judge their credibility and what they're presenting to me.

---

[3] CR 43.

As I indicated, I have made exceptions, particularly in termination trials, but in this case I'm going to decline to exercise my discretion in this matter mainly for the reason that the parties have exited themselves from the state of Washington by their own accord and refuse to submit to the jurisdiction of this Court. They had notice of this trial. There's nothing that has been indicated to me that they can't make themselves available, they just simply refuse to. Based upon that refusal, I'm not willing to extend any discretion to them. So the parents' motion to appear telephonically is denied.[4]

Todd does not argue that the trial court abused its discretion when it denied her motion to appear by telephone under this rule. Such an argument would have been unsuccessful because the reasons stated by the court were well within the proper bounds of discretion.

Instead, she argues that her due process rights were violated because she was not able to testify at trial by telephone.

This court reviews de novo alleged due process violations.[5]

In termination proceedings, due process requires that parents have notice, an opportunity to be heard and defend, and the right to be represented by counsel.[6]

The right to be heard "ordinarily includes the right to be present."[7] In the context of incarcerated parents, "The right to appear personally and defend is not

---

[4] Report of Proceedings (Sept. 30, 2013) at 7-8.

[5] Post v. City of Tacoma, 167 Wn.2d 300, 308, 217 P.3d 1179 (2009).

[6] In re Welfare of S.E., 63 Wn. App. 244, 250, 820 P.2d 47 (1991).

[7] In re Welfare of Houts, 7 Wn. App. 476, 481, 499 P.2d 1276 (1972).

guaranteed by due process so long as the prisoner was afforded an opportunity to defend through counsel and by deposition or similar evidentiary techniques."[8]

"The proper process to ensure protection of the parent's due process rights depends on the balancing of three factors: (1) the parent's interest, (2) the risk of error created by the procedures, and (3) the State's interest."[9]

For the first factor, Todd has a fundamental liberty interest in the custody and care of her children.[10] "When the state moves irrevocably to sever the parent-child bond, the rights of parents to protection from 'unwarranted usurpation' by the state are guaranteed by the Fourteenth Amendment," and the proceedings must be "'fundamentally fair.'"[11] But this interest is "not absolute and must be balanced against the other factors."[12]

For the third factor, the State has a "vital interest in protecting the welfare of children."[13] "[T]he State and the child have a strong interest not only in

---

[8] In Interest of Darrow, 32 Wn. App. 803, 808, 649 P.2d 858 (1982).

[9] M.S., 98 Wn. App. at 94.

[10] In re Dependency of K.D.S., 176 Wn.2d 644, 652, 294 P.3d 695 (2013).

[11] In re Welfare of J.M., 130 Wn. App. 912, 921, 125 P.3d 245 (2005) (quoting Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 33-34, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)).

[12] M.S., 98 Wn. App. at 95.

[13] Id.

establishing a stable and permanent home for the child, but also in doing it as soon as possible."[14]

Additionally, the State has a "fiscal and administrative interest in reducing the cost and burden of such [termination] proceedings."[15] The State argues that trial counsel is "hampered in presentation of the case by testimony by phone, for example, by the inability to present documents or other evidence to the person for review." The State also asserts that "[t]estimony by phone costs the court, especially when a parent may give lengthy testimony by phone from out of state."

Given these competing interests, the second factor, the lack of risk of error presented by the procedure followed in this case, is dispositive.

In In re Dependency of M.S., this court concluded that a parent's right to due process was properly protected even though he was not able to testify by telephone when he was incarcerated.[16] This court determined that the "risk of error created by the procedures used in this case was minimal."[17] It gave the following explanation:

> We note that [the parent] does not challenge on appeal any of the factual findings by the trial court. In fact, he agrees that they accurately reflect the evidence. Moreover, [the parent's] counsel examined witnesses and presented other evidence at the hearing. At that hearing, his trial counsel made an offer of proof adopting the testimony of the guardian ad litem as the same that [the parent]

---

[14] In re Dependency of C.R.B., 62 Wn. App. 608, 615, 814 P.2d 1197 (1991).

[15] In re Dependency of T.R., 108 Wn. App. 149, 159-60, 29 P.3d 1275 (2001).

[16] 98 Wn. App. 91, 92, 988 P.2d 488 (1999).

[17] Id. at 95.

would give had he testified. Finally, as an additional safeguard, the trial court offered [the parent] the opportunity to present his affidavit after the hearing and termination order. He failed to do so. And, as of the time of oral argument on this appeal, counsel was unable to indicate what more [the parent] could have said to the trial court that was not already in the record.[18]

While not all of the facts in M.S. are the same as this case, the same conclusion is appropriate. Todd was represented by counsel during the termination trial. Counsel filed a trial brief, presented an opening statement, cross-examined the State's witnesses, made objections, and presented closing argument. Counsel had the opportunity to present other evidence but declined.

Additionally, there is no dispute that Todd was properly given notice for the termination proceeding. Had she personally appeared in court, there is no reason to believe that she would not have had the opportunity to testify during the trial.

And Todd's counsel made no offer of proof or other statement indicating what testimony she would have provided to change the outcome of the trial. Moreover, Todd did not request to testify by telephone until the first day of the trial.

Finally, there is no challenge to the findings of fact of the court. They are verities on appeal.

Overall, the procedure was fundamentally fair. Under these circumstances, the trial court did not violate Todd's due process rights by denying her motion to testify by telephone.

---

[18] Id.

Todd argues that this case is distinguishable from M.S. But these distinctions are not meaningful.

Todd points to the fact that the parent in M.S. was able to present his version of the facts because the parent adopted the testimony of the guardian ad litem as the same the parent would give.[19] Additionally, the trial court gave the parent the opportunity submit an affidavit summarizing his testimony.[20] While these factual differences may have reduced the risk of error in M.S., other facts are present in this case, as just discussed, that reduced the risk of error here. Thus, these factual differences do not change the result. Further, like M.S., Todd does not indicate what else she would have said that was not already in the record.[21]

Todd next asserts that if she was allowed to testify by telephone, "[t]he risk of error is reduced." She contends that she would have been able to "'present [her] version of the facts'" and challenge the evidence that the State presented.[22] She asserts that the "one-sided presentation of evidence" is reflected by the findings of fact, and the findings may have been different had Todd testified.[23]

---

[19] Reply Brief of Appellant at 3-4 (citing M.S., 98 Wn. App. at 95).

[20] Brief of Appellant at 12 (citing M.S., 98 Wn. App. at 95).

[21] M.S., 98 Wn. App. at 95.

[22] Id. (citing In re Welfare of Hagen, 21 Wn. App. 169, 173, 584 P.2d 446 (1978)).

[23] Id. at 18-19.

But Todd was able to present "her version of the facts" and challenge the State's evidence through her counsel throughout the trial. The fact that she did not recount "her version of the facts" at the trial, in person, was her choice. The presentation of evidence was not "one-sided." Further, as previously discussed, it is not clear what testimony Todd would have provided that would have changed the outcome of the trial.

Todd next cites In re Welfare of R.H. for the principle that given the parents' fundamental constitutional rights at stake in termination hearings, "'due process requires that parents have the ability to present all relevant evidence for the juvenile court to consider prior to terminating a parent's rights.'"[24] That case analyzed whether the trial court erred by failing to grant a motion to continue the termination trial to allow for a home study.[25]

Here, the trial court did not take away Todd's ability to present all relevant evidence. As just discussed, the court denied her the ability to present her testimony by telephone. Thus, R.H. is not helpful.

Todd also contends that her failure to attend to the outstanding warrants in Washington "should have no bearing on her right to present a defense through her testimony at the parental rights termination case." Todd's failure to address the outstanding warrants was the basis for the trial court's decision to not exercise its discretion and allow telephonic testimony under CR 43. But that rule

---

[24] Reply Brief of Appellant at 1 (quoting In re Welfare of R.H., 176 Wn. App. 419, 425-26, 309 P.3d 620 (2013)).

[25] R.H., 176 Wn. App. at 423.

is separate from the only issue on appeal—whether the procedure used in this case was fundamentally fair.

She also contends, "Punishing Todd by refusing to hear her testimony as a result of her recalcitrance in turning herself into the criminal authorities *in other cases* does not serve to preserve or decrease the risk of an erroneous deprivation of parental rights in the case at hand." But the risk of an erroneous deprivation was low for the reasons already discussed.

Finally, Todd cites two extra jurisdictional cases to support her assertion that her due process rights were violated.[26] But both of these cases involved an incarcerated parent.[27] Thus, they are not helpful here.

We affirm the order of termination.

Cox, J.

WE CONCUR:

Becker, J.

---

[26] Brief of Appellant at 17 (citing State ex rel. Children, Youth and Families Dep't v. Ruth Anne E., 126 N.M. 670, 974 P.2d 164 (1999); Matter of Eileen R., 912 N.Y.S.2d 350, 79 A.D.3d 1482 (2010)).

[27] Ruth Anne E., 974 P.2d at 166; Eileen R., 79 A.D.3d at 1482.