■ In the Matter of STATE OF NEW YORK, Respondent, v ADRIEN S., Appellant. [980 NYS2d 558]—

In a proceeding pursuant to Mental Hygiene Law article 10, Adrien S., an alleged sex offender requiring civil management, appeals from an order of the Supreme Court, Nassau County (Calabrese, J.), entered July 11, 2012, which, upon a finding, made after a jury trial, that he suffers from a mental abnormality as defined in Mental Hygiene Law § 10.03 (i), and upon a determination, made after a dispositional hearing, that he currently is a dangerous sex offender requiring civil confinement, in effect, granted the petition and directed that he be committed to a secure treatment facility for care, treatment, and control until such time as he no longer requires confinement.

Ordered that the order is reversed, on the law and the facts, without costs or disbursements, the finding of mental abnormality is set aside, and the matter is remitted to the Supreme Court, Nassau County, for a new trial on the issue of mental abnormality, and, if necessary, a new dispositional hearing.

In 2002, the appellant was convicted, upon his plea of guilty, of burglary in the second degree, based upon an incident in which, in addition to unlawfully breaking into a woman's home and stealing a knife, he also allegedly rubbed or touched that woman's vagina and buttocks with a hard object. In September 2008, the State commenced this proceeding under article 10 of the Mental Hygiene Law, alleging that the appellant was a sex offender requiring civil management. The Supreme Court subsequently conducted a jury trial on the issues of whether the acts constituting burglary in the second degree, a designated felony pursuant to Mental Hygiene Law § 10.03 (f), were sexually motivated and whether the appellant suffers from a mental abnormality (see Mental Hygiene Law § 10.03 [i]). The jury

unanimously found that the commission of the designated felony was sexually motivated and that the appellant suffers from a mental abnormality. On appeal, the appellant contends, inter alia, that the Supreme Court committed reversible error by failing to provide, upon his counsel's request, further instruction on the meaning of the term "sex offense" as part of the jury charge on mental abnormality.

In the trial phase of a Mental Hygiene Law article 10 proceeding, the jury is required to make a finding of whether the subject of the proceeding suffers from a "mental abnormality." "Mental abnormality" is defined as: "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]). The term "sex offense," as set forth in the definition of the term "mental abnormality," is also a specifically defined term under Mental Hygiene Law article 10. In this regard, the definition of "sex offense" is limited to an act or acts constituting any felony defined in Penal Law article 130 (crimes involving rape, and nonconsensual oral and anal sexual contact against children and adults), patronizing a prostitute in the first degree (Penal Law § 230.06), incest in the first and second degrees (Penal Law §§ 255.27, 255.26), a felony attempt or conspiracy to commit any of the foregoing offenses, or a sexually motivated designated felony committed prior to April 13, 2007 (see Mental Hygiene Law § 10.03 [p]). Significantly, the term "sex offense," as employed in the statute, does not have a common or colloquial meaning, and does not encompass all sexually illegal misconduct. Rather, "it is an explicitly defined term which relates to the specific offenses listed in the definition and no other offenses" (Matter of State of New York v P.H., 22 Misc 3d 689, 706 [Sup Ct, NY County 2008]). Consequently, the finder of fact is required, inter alia, to determine whether the subject of the proceeding has a condition, disease, or disorder that predisposes him or her to commit conduct that would constitute a "sex offense" as defined under Mental Hygiene Law article 10.

Although the Pattern Jury Instructions (see PJI 8:8) omit the statutory definition of "sex offense" from the instructions with respect to the term "mental abnormality," the PJI advises: "there may be cases in which the evidence of the [subject's] predisposition to commit sex offenses includes examples of sexual misconduct not rising to the level of the felonies enumerated in § 10.03 (p) (e.g., third-degree incest, see Penal Law

§ 130.25 [sic], or forcible touching, see id § 130.52). While such evidence may be relevant, it also may create a risk that the jury will infer, mistakenly, that the [subject of the proceeding] has a 'mental abnormality' solely because [he or she] has a condition that creates a predisposition to engage in the non-enumerated sexual misconduct. Where such a risk exists, the court should make clear that a finding of 'mental abnormality' can be made only if the evidence establishes that the [subject of the proceeding] has a condition that predisposes him or her to commit one or more of the serious 'sex offenses' delineated in § 10.03 (p)'' (NY PJI 8:8, Comment, Caveat 3).

Here, the State's evidence consisted predominantly of instances of the appellant's sexually inappropriate acts that would not constitute sex offenses under Mental Hygiene Law article 10. Specifically, the State's expert testified at length regarding instances in which the appellant masturbated while he could be observed by prison officers or by staff members while placed at a secure treatment facility, and his propensity to continue to act in a sexually improper manner. The appellant's conduct, however, at most, might constitute the crime of public lewdness (Penal Law § 245.00), a class B misdemeanor, which is not one of the sex offenses enumerated under Mental Hygiene Law article 10. In light of the particular circumstances presented in this proceeding, the Supreme Court should have granted the appellant's request to issue an expanded charge to the jury containing supplemental information as to the specific statutory meaning of "sex offense," so that the jury could make a proper evaluation of the evidence.

Contrary to the State's contention, the omission from the charge was not harmless. In this regard, the jury note sent to the Supreme Court during deliberations indicates a certain level of confusion (*see generally People v Medina*, 18 NY3d 98, 105-106 [2011]). Moreover, the Supreme Court's failure to either provide the statutory definition of "sex offense" under Mental Hygiene Law article 10 or to inform the jury that there is a distinction between a predisposition to commit a "sex offense" and a predisposition to commit nonenumerated acts of sexual misconduct could have misled the jury into making a finding of mental abnormality, based solely upon the evidence of the appellant's predisposition to commit any improper sexual conduct. Consequently, a new trial is required (*see generally People v Blacknall*, 63 NY2d 912, 913 [1984]; *Spells v Foley*, 84 AD2d 786, 786-787 [1981]).

Contrary to the appellant's contention, he was not entitled to a jury instruction that no adverse inference could be drawn

from the fact that he did not testify (*see* CPL 300.10 [2]), as Mental Hygiene Law article 10 proceedings are of a civil rather than a criminal nature (*see People v Harnett*, 16 NY3d 200, 206 [2011]; *Matter of State of New York v Campany*, 77 AD3d 92, 98 [2010]).

In light of our determination, we need not address the appellant's remaining contentions. Dillon, J.P., Balkin, Chambers and Cohen, JJ., concur.